CHAS. H. WUNNICKE, *Plaintiff and Respondent,*

v.

LEONARD L E I T H, *Defendant,* and D O N A L D LEITH, *Defendant and Appellant.*

(No. 2294; March 27th, 1945; 157 P. 2d 274)

For the plaintiff and respondent the cause was submitted on the brief and oral argument of Ray E. Lee, of Cheyenne, Wyoming.

For the defendant and appellant the cause was submitted on the brief of Charles E. Lane, and oral argument by Mr. Lane and A. D. Walton, both of Cheyenne, Wyoming.

## OPINION

RINER, Justice.

This is another case involving a question similar to that disposed of in No. 2295, Earl Kimbel, etc., v. J. W. Osborn, etc., et al., recently decided. Here the principal question to be determined is whether the District Court of Laramie County acted properly in declining to set aside and vacate a judgment in the case at bar which had previously been entered by the Clerk alone, the authority for doing this being claimed under Section 89-1207, W. R. S., 1931. Other questions arising in connection with the point suggested in the preceding sentence will also require disposition. It will be necessary, therefore, to set out briefly the material history of this litigation. The parties will usually be referred to as plaintiff and defendants, as designated in the District Court, or by their respective names.

The record before us discloses that on March 2, 1942, the plaintiff, Chas. H. Wunnicke, brought an action in the District Court, aforesaid, against the defendant, Leonard Leith and Donald Leith, upon a promissory note reading:

"No..................
    Cheyenne, Wyo., Apr. 15, 1932      $1294.30
November 15th, 1932 after date for value received, we jointly and severally promise to pay to the order of

FRANK A. ROEDEL ESTATE
Twelve Hundred Ninety-Four and 30-100        Dollars
At His Place of Business, Cheyenne, Wyoming
with interest at    8    per cent per annum from date
until paid. In case payment shall not be made at maturity, and if placed with an attorney or any collector for collection, I/we agree to pay a reasonable collection fee and costs, which shall be added to the principal of this note. The makers, endorsers, and guarantors of this note severally waive presentment for payment, demand, protest and notice of protest and non-payment thereof.

Leonard Leith

Donald Leith"

This note carried an endorsement on its back, "11/3/32 142.02 pd.", and on said note plaintiff's petition asserted that there was due the sum of $1152.30 and the sum of $921.81 interest to the time of filing the pleading. The note was alleged by plaintiff to have been sold and assigned to him by the Stock Growers National Bank of Cheyenne, acting as the executor of the Will of Frank A. Roedel, deceased, said sale being made February 27, 1942, pursuant to an order of the District Court of Laramie County, Wyoming, dated February 11, 1942. Preceding these allegations as to the sale of said note plaintiff's petition stated:

"That on the fifteenth day of April, 1932 at Cheyenne, State of Wyoming, the defendants Leonard Leith and Donald Leith, for a good and valuable consideration, made, executed and delivered to Chas. H. Wunnicke, agent for and on behalf of the Frank A. Roedel Estate their certain promissory note in writing of that date whereby he promised to pay to the said Frank A. Roedel Estate, or order on November 15, 1932 the sum of One Thousand Two Hundred Ninety Four and 30/100 ($1294.30) Dollars with interest thereon until paid at the rate of eight percent per annum, together with costs of collection and attorney fees in case payment shall not be made at maturity."

It was also alleged that:

"by the terms of said note defendant undertook to pay all costs of collection including an attorney fee in case the holder was obliged to enforce payment at law. That a reasonable attorney's fee in such a case is Five Hundred and no/100 ($500.00) Dollars."

Judgment was asked in the sum of $2574.11.

Summons was issued calling on the defendants to answer plaintiff's petition "on or before the 4th day of April, 1942." The summons was served in Laramie County, Wyoming, by a Deputy Sheriff thereof, the officer's return stating that the service was made by delivering a true copy of the summons and petition to "Donald Leith personally and in person. To Leonard Leith by leaving a true copy with Donald Leith, brother of Leonard Leith, a person over the age of 14 years, a member of the family and living at his usual place of residence."

April 9, 1942, the plaintiff requested the Clerk of the Court, aforesaid, to enter judgment in said action for the reason that the action was one upon a promissory note, that defendants have been personally served with summons and are "now in default" for answer. The same day the Clerk entered a judgment in the cause as follows:

"Upon the written request of the plaintiff for entry of judgment against the defendants in the above entitled action, and upon the submission of said request and promissory note upon which plaintiff's action is founded.

IT IS CONSIDERED, ORDERED and ADJUDGED that said plaintiff have and recover of and from said defendant the total sum of Two Thousand Five Hundred and Seventy-four and 11/100 ($2574.11) and the costs of this action taxed at $9.05, together with interest on said sums at legal rate from the date hereof until paid.

Dated April 9, 1942.

W. A. JAMES
Clerk of the District Court in and
for Laramie County, Wyoming."

On the 23rd of June, 1942, plaintiff sued out an execution upon this judgment against said defendants for the sum of $2674.11 and $9.05 costs. The return of the Sheriff on this process shows that he levied same upon certain described real property, approximately 640 acres in amount, in said Laramie County "belonging to defendants," had it appraised, advertised for sale, and after publication of notice of sale, sold said property to the plaintiff, Wunnicke, on July 31, 1942; that return of this sale was made to the Court aforesaid and said sale was by the Court confirmed on August 1, 1942, and that the Sheriff delivered to said purchaser the certificate of sale as provided by law.

The appraisement thus made was for a total valuation of $4474.48 "without considering any encumbrances on said property." The notice of sale was published in the Pine Bluffs Post, a newspaper published in the town of Pine Bluffs in Laramie County. The sale of said property was made to the plaintiff for more than two-thirds of this appraised value upon a bid for $3675.00, made up thus:

"The assumption of the first mortgage of Russell B. Davis on said premises in the sum of $1200.00; the assumption of the second mortgage in favor of the Federal Land Bank Commissioner in the sum of $777.00, and the balance of said bid, to-wit, $1698.00, to be applied upon the judgment of said plaintiff, upon which said execution was issued; * * *."

It appears that in due course the Sheriff of Laramie County issued his deed to the property thus sold to the plaintiff as grantee, no redemption from the sale thereof having been undertaken. This deed was by the

plaintiff recorded in the office of the County Clerk of said County about May 3, 1943, as is alleged by the defendant, Donald Leith.

July 6, 1943, the defendant, Donald Leith, filed in the District Court of Laramie County, what is designated as a "Petition-Motion" by which he sought to have the judgment above described set aside and vacated on the ground that it was void "because the same was illegally and fraudulently secured by plaintiff." This defendant thereby undertook also to question the propriety of personal service of process upon Leonard Leith, the claim in that respect being that the Sheriff of Laramie County:

"* * * illegally certified that he had gotten personal service upon Leonard Leith by leaving copies of the summons and papers with Donald Leith at his ranch; your petitioner further shows this court that Leonard Leith moved with his family from the State of Wyoming many years ago, and that said Leonard Leith has not been within Laramie County or the State of Wyoming since the year 1936, and since removing from this state he has made his home for himself and family in a foreign State; * * *."

As to the judgment aforesaid the "Petition-Motion" charges, among other things:

"That when said pretended judgment was considered, ordered and adjudged, said judgment was not considered, ordered and adjudged by the Judge of this District Court, and the judicial discretion vested by law in the Judge of this District Court was in nowise used or exercised by the Judge of this Court when said clerk considered, ordered and adjudged that Donald Leith and Leonard Leith were indebted to said plaintiff in said sum of $2574.11; your petitioner further shows this Court that there is no judgment or order on file in the office of the clerk of this court in said cause of action signed by the Judge of this court considering ordering and adjudging that the plaintiff have and recover of and from said Donald Leith and Leonard Leith 'the total of $2574.11', nor was there a legal adjudication

of said judgment including said total amount of $2574.-11 by the Judge of this Court, and consequently no judicial discretion was exercised in the pretended execution of said pretended judgment, signed as aforesaid by the clerk of this court; * * *."

Complaint is further made that the Clerk in entering up said judgment and including $500.00 attorney's fees in the total sum of $2574.11 on said note exercised judicial discretion in thus acting. The said defendant additionally alleged "that said note was paid in full."

To this "Petition-Motion" the plaintiff demurred on the ground that the facts therein alleged were insufficient "to constitute any ground for relief against said plaintiff and in favor of said defendant." January 7, 1944, the District Court by its order sustained said demurrer and allowed the defendant, Donald Leith, fifteen days thereafter in which to file an amended pleading or to elect to stand upon said "Petition-Motion."

The same day, to-wit, January 7, 1944, the Court entered another order reading:

"The above entitled action coming on regularly for hearing before the Court on January 3, 1944, and upon examining the record the court, of its own motion, finds that the attorney fee of $500.00, included in the original judgment herein, which was entered April 9, 1942, should be disallowed and stricken from said judgment.

WHEREFORE, IT IS CONSIDERED AND ORDERED that the judgment entered in said action on April 9, 1942 be and it hereby is amended by striking therefrom the sum of $500.00 which was included in said judgment as attorney fees and this order shall relate back and be effective as of April 9, 1942. Exception allowed defendant Donald Leith."

Thereafter, on January 15, 1944, the said defendant, Donald Leith, filed an "amended petition" wherein he again sought to have the judgment entered by the

Clerk as aforesaid vacated. It incorporated substantially the same matters as were made the subject of complaint in the "Petition-Motion" outlined above and undertook to set out a rather elaborate history of certain matters appearing in the files of the Frank A. Roedel Estate, theretofore pending in the District Court of Laramie County, and particularly a note of date March 30, 1929, payable to Frank A. Roedel from Leonard and Donald Leith, with a principal sum of $1017.90 due November 1, 1929, with 10 per cent interest and costs of collection, on which there was a credit of $339.30, of even date with the note leaving a balance due of $678.60.

So far as we are able to understand the allegations of this pleading it appears by it that Frank A. Roedel died leaving estate in Laramie County, Wyoming, and the Stock Growers National Bank of Cheyenne, with A. E. Roedel and Fred Roedel were appointed executors of the estate; that in addition to said note of March 30, 1929, the Leiths, Leonard and Donald, owed for certain merchandise purchased by them from Frank A. Roedel in a stated amount; that these items, the said note and open account indebtedness were listed in the assets of said estate; that on January 30, 1932, said executors sued the Leiths on said open account which with interest amounted to $300.56 and also upon the balance due on the note last mentioned which with interest and attorney's fees then amounted to $989.99; that the total amount sued for in this action including court costs, was $1294.30; that this action was, on or about April 15, 1932, settled and compromised for that amount by the Leiths giving a new note in that sum secured by chattel mortgage on certain cattle and machinery owned by them, said new note being made payable to the order of "Frank A. Roedel Estate" on November 15, 1932; that this new note is the one sued on by the plaintiff, Wunnicke, in the cause at bar; that on

November 23, 1932, the executors of the Frank A. Roedel Estate filed a replevin suit against the Leiths for the machinery mortgaged to secure the new note aforesaid; that this machinery taken in the replevin action was thereafter sold and for some reason not apparent applied on the balance due, not on the compromise note aforesaid but on the original note for $1017.-90, described above, thus reducing it with other credits to the sum of $211.58; that the ninth current report of the executors filed April 14, 1939, states that the executors had reduced the indebtedness on the original note from $678.00 to the sum of $211.58, which balance the executors believe "to be uncollectable"; that on February 11, 1942, said executors filed a petition for the sale of certain personal property, the same being a number of so-called "bad" notes totaling in amount the sum of $9856.20; that among these notes was listed the Leith's original note for $1017.90, and as having a balance due thereon of $211.58, which balance is again stated to be "uncollectable"; that authority was asked by said executors thereby to sell these so-called "bad" notes for the sum of $5.00 so as to close the estate; that under date of February 11, 1942, the District Court of Laramie County, made an order granting this authority; that the executor's final account set forth the sale of the Leiths' note with balance due thereon of $211.58 at aforesaid with the other uncollectable paper paper to Charles Wunnicke, the plaintiff herein; that the compromise note aforesaid "was never inventoried in the said Roedel Estate while being probated (although many inventories were made during the administration of said estate, was never mentioned in any of the many reports filed by the Executors of said Estate in the District Court)."

January 25, 1944, the plaintiff filed a motion for an order striking from the files of this cause "the document designated amended petition," on the ground that

it "does not raise any issue or present any matter other than what the defendant, Donald Leith, attempted to raise in his former so-called pleadings herein and is merely a repetition of matters," heretobefore held to be insufficient.

Thereafter and on January 27, 1944, this motion was by Court order sustained and the defendant, Donald Leith, electing to stand upon his amended petition, it was also ordered that the amended petition be "finally dismissed with prejudice." Exception was saved to these rulings and Donald Leith has brought the cause here for review by direct appeal.

It is contended for the plaintiff that the Clerk "had authority to enter the judgment which he did enter on April 9, 1942." Section 89-1207, W. R. S., 1931, and our case of James, et al., v. Lederer-Strauss and Co., 32 Wyo. 377, 233 Pac. 137, are cited in support of this position.

Under the decisions reviewed in our case No. 2295, the Kimbel case, supra, the judgment in the case at bar and now brought in question is not merely irregular or erroneous but absolutely void and a nullity. In addition to those authorities we may properly refer to the case of Kelly v. Austin, 17 Cal. 564, where the opinion was written by Field, C. J., afterwards a Justice of the Supreme Court of the United States. That also was a case where the Clerk had entered an unauthorized default judgment and the Court pointed out that:

"The Clerk in entering judgments upon default acts in a mere ministerial capacity . He exercises no judicial functions. The statute authorizes the judgment, and the Clerk is only an agent by whom it is written out and placed among the records of the Court. He must, therefore, conform strictly to the provisions of the statute, or his proceedings will be without any binding force. (Stearns v. Aguirre, 7 Cal. 443)"

The James case, supra, is not in point here. The judgment there involved had been rendered by the Clerk upon an open account simply, the matter of reasonable attorney's fees was neither raised nor discussed and the Court held that the Clerk had authority to enter such a judgment. As we have seen, the situation at bar is quite different, i. e., a judgment for a lump sum in which is included an amount for a "reasonable attorney's fee" as pleaded in plaintiff's petition, a judgment the Clerk had no authority at all to enter.

Citing an extended list of authorities as to the effect to be given a void judgment, 31 Am. Jur. 91, § 430, says that:

"It is attended by none of the consequences of a valid adjudication. It has no legal or binding force or efficacy for any purpose or at any place. It cannot affect, impair, or create rights. It is not entitled to enforcement and is, ordinarily, no protection to those who seek to enforce it. All proceedings founded on the void judgment are themselves regarded as invalid. In other words, a void judgment is regarded as a nullity, and the situation is the same as it would be if there were no judgment. * * * The general rule is that a judgment which is void cannot be cured by subsequent proceedings."

In 21 Am. Jur. 27, § 23, in harmony with the text excerpt just given, declares that:

"The general rule is that an execution may not issue upon a void judgment; an execution so issued is itself absolutely void, and such invalidity extends to acts performed thereunder. Accordingly, title does not pass to a purchaser at an execution sale, where the judgment supporting it is void. These principles have been applied in a case where a personal judgment was rendered against the defendant without acquiring jurisdiction over the person, as in the case of a judgment secured through the unauthorized appearance of an attorney or without possessing jurisdiction over the subject matter, and where a judgment was entered by a clerk of court without authority."

So in Lamaster v. Keeler, 123 U. S. 376, 8 S. Ct. 197, 31 L. Ed. 238, the Supreme Court of the United States, speaking through Mr. Justice Field, announces the same rule. There the Clerk entered an unauthorized judgment by extending a judgment against a number of sureties on a bond and also issuing execution upon such judgment. Certain property was sold under this execution, the sale was confirmed by the trial court, and a marshal's deed was made to the purchaser. The action was ejectment by one who traced his title through said purchaser to evict the owner of the property, one of the sureties. Reversing a judgment for the plaintiff the Court concludes the opinion filed thus:

"* * * the act of the clerk extending that judgment against the sureties was without authority and void. The sale, under the execution of the property of Lamaster, one of the sureties, and the deed of the marshal to the purchaser at such sale, therefore, conferred no title.

The confirmation of the sale by the order of the court did not cure the invalidity of the execution upon which it was made. The extension of the judgment against Young, so as to embrace the sureties, being a void proceeding, no subsequent action upon the sale could give it validity. A confirmation of a sale may cure mere irregularities not affecting its fairness, but not an infirmity growing out of the nullity of the judgment under which it was had."

Similarly, 33 C. J. S. 141, § 8, says that:

"Where, because of want of jurisdiction of the court rendering judgment, fatal defects in the proceedings, uncertainty of the verdict, fraud, or for any other cause, the judgment is void, an execution issued thereon is of no validity and no title can be acquired under it; nor can such execution be validated by an amendment to the judgment subsequent to the issuance of the writ, the reason being that if the amendment were valid the execution would show a different judgment than the one on which it was issued, and would therefore on that account be a nullity; and if the amendment

were invalid, the judgment on which execution was is-sued would still be void."

It is urged also for plaintiff that the amended petition aforesaid did not show a meritorious defense to the note sued upon by him in the case at bar and was consequently insufficient under the requirements of Wyoming Statutes authorizing the Court to re-open a judgment at a subsequent term. Sec. 89-2305, W. R. S., 1931, and associated sections.

Where judgment was rendered against a party without any service of summons upon him and consequently was void for want of jurisdiction of the person, in Hanson v. Wolcott, 19 Kan. 207, the appellate court reversed an order of the District Court overruling a motion to set aside the judgment, and said:

"Under these circumstances, the district court erred in refusing to vacate said judgment on the motion of the plaintiff in error. Counsel for defendant in error contend, that the motion to vacate the void judgment was properly overruled, because the court below was not advised of any valid defense. It is true, that section 572 of the civil code provides that a judgment shall not be vacated on motion, or petition, until it is adjudged that there is a valid defense to the action; but this section in the nature of things does not apply to judgments rendered by a court having no jurisdiction of the person of the defendant, and where the judgment, so called, is a nullity. Independent of section 572 and 575, the court has the power to vacate void judgments. The addition o fthe clause in section 575, gives no additional power to the court. It simply enunciates a power it always possessed. The previous decisions of this court fully sustain this conclusion, if any authorities need be cited in favor of so salutatory a determination. Foreman v. Carter, 9 Kas. 674; Chambers v. King Wrought-Iron Bridge Manufactory, 16 Kas. 270."

The opinion was by Chief Justice Horton with whom concurred Mr. Justice Brewer, subsequently a member of the Supreme Court of the United States. Section

570 of the General Statutes of Kansas, 1868, then read substantially the same as Section 89-2305, W. R. S. 1931, supra; and Section 572 of the same statutory revision of the Kansas laws is practically identical with our Section 89-2307, W.R.S. 1931, which reads:

"A judgment shall not be vacated on motion or petition until it is adjudged that there is a valid defense to the action in which the judgment was rendered; or if the plaintiff seeks its vacation, that there is a valid cause of action; and when a judgment is modified, all liens and securities obtained under it shall be preserved to the modified judgment."

Mr. Freeman takes the same view of the matter as the Kansas Court. In I Freeman on Judgments, (5th Ed.) Sec. 282, p. 559, the learned author says:

"A judgment which is wholly void is in legal effect a nullity. Consequently no showing of merits is necessary in support of an application to have it vacated."

See also Abernathy, et al., v. Bonaparte, 166 Okl. 192, 26 Pac. 2d 947; Eltermeyer v. City of Cheyenne, 57 Wyo. 421, 120 Pac. 2d 599.

In Ballard Savings & Loan Assn., v. Linden, 188 Wash. 490, 62 Pac. 2d 1364, the Court declared:

"There is no question but that a court has inherent power to purge its records of void judgments. It may do so of its own motion. It must be conceded that a party to the record, adversely affected by a void judgment, may have the judgment vacated as a matter of right—and this without a showing of a meritorious defense. Hole v. Page, 20 Wash. 208, 54 P. 1123; Batchelor v. Palmer, 129 Wash. 150, 224 P. 685."

The Supreme Court of Wisconsin in Chippewa Valley Securities Co. v. Herbst, 227 Wis. 422, 278 N. W. 872, discussed the point in which we are interested thus:

"The defendants' motion was based entirely upon want of jurisdiction or want of authority to enter the judgment on the warrant of attorney contained in the conditional sale contract. Since the motion to vacate was based solely upon a lack of jurisdiction, it seems clear that no proposed answer or affidavit of merits was required. The whole proceeding was void. The general rule, of course, is that a judgment will not be set aside unless there is a showing that the defendant has a meritorious defense to the action. That rule, however, is subject to the exception that a party is entitled to have a judgment against him vacated without any showing of merits where the judgment attacked is void for want of jurisdiction. 34 C. J., p. 333."

In Snyder v. Clough, 71 Ch. App. 440, 50 N. E. 2d 384, the appellate court of Ohio, in reviewing briefly the Ohio cases on the point remarked that:

"In Hayes v. Kentucky Joint Stock Land Bank of Lexington, 125 Ohio St. 359, 181 N. E. 542, an action by petition after term to vacate a default judgment is approved of, because there had been no service of summons and hence no jurisdiction. It held the judgment to be a nullity and void, and it went on to observe that in such a case the judgment should be vacated without a showing of a valid defense. In other words Section 11637, General Code, did not apply. If it did not, surely its related sections, with which it stood in pari materia, likewise could not apply. The court approved of and followed its earlier pronouncements in Kingsborough v. Tousley, 56 Ohio St. 450, 47 N. E. 541. See, also, Greene v. Woodland Ave. & West Side Street Rd. Co., 62 Ohio St. 67, 56 N. E. 642."

Sec. 11637, General Code of Ohio, mentioned in the preceding excerpt is identical with Sec. 89-2307, W. R. S. 1931, quoted above. The members of the bar of this jurisdiction are quite familiar with the fact many times mentioned in our decisions that our civil code of procedure was, to a large extent, borrowed from that of the State of Ohio.

Even if we were not inclined to agree with the above

very cogent authorities, still the material set forth in the amended petition and hereinbefore briefly reviewed would appear to show that the note in suit had at least been partially paid. Hence it would seem that justice would require that this question should be litigated and the right of the matter be accurately determined.

The suggestion is made for the plaintiff further that the judgment for attorney's fees could be eliminated from the judgment at bar and the remainder thereof allowed to stand. This is said evidently having in mind the action of the Court of its own motion under date of January 7, 1944, mentioned above, undertaking to remove from the amount of the judgment entered by the Clerk, the sum pleaded by plaintiff as a reasonable attorney's fee.

The same contention was advanced in Tripp v. Dotson, 51 Ida. 200, 4 Pac. 2d 349, heretofore reviewed in the Kimbel case, supra, and rejected by that Court in this language:

"Appellants' earnest argument that only that part of the judgment pertaining to attorney's fees is void, and that the remainder is valid, is based upon the proposition that the clerk had jurisdiction to enter judgment for that remainder. But the proposition, manifestly, is untenable, seeing that the statute in the given instance prohibits him from entering any judgment at all."

As theretofore pointed out by that Court in that case, the Clerk "is without authority to enter judgment piecemeal, including some integers and excluding others." This is not a case where attorney's fees were "erroneously" included as in Hillsdale State Bank v. Christensen, 32 Wyo. 68, 229 Pac. 105, to which our attention has been directed. In that case the judgment was not void. Here it is a nullity for want of authority on the part of the Clerk to enter it. See also Ex parte S. & R. McLeod, 20 Ala. 641, 104 So. 688; Ainsworth v.

Ainsworth, 267 N. Y. S. 587, and I Freeman on Judgments (5th Ed.) Sec. 159, p. 311, asserts the rule to be:

"A judgment which is void cannot be made valid by amendment."

We are obliged to conclude therefore that the order appealed from should be reversed and the cause remanded for further proceedings therein not inconsistent with the views hereinabove expressed.

*Reversed.*

BLUME, C. J., and KIMBALL, J., concur.