In re the Marriage of Patrick J. GAUGHAN, Lower Court Petitioner,

v.

Barbara A. GAUGHAN, Lower Court Respondent.

HILLSTROM & BALE, LTD., Respondent,

v.

Patrick J. GAUGHAN, Appellant.

No. C2-89-1100.

Court of Appeals of Minnesota.

Jan. 16, 1990.

Review Denied March 16, 1990.

Thomas P. Malone, Minneapolis, for Patrick J. Gaughan.

Neil Polfstein, Hillstrom & Bale, Ltd., Minneapolis, for Hillstrom & Bale, Ltd.

Considered and decided by FOLEY, P.J., and KALITOWSKI and STONE\*, JJ., without oral argument.

## OPINION

KALITOWSKI, Judge.

Patrick Gaughan appeals from a judgment entered on June 7, 1989, in favor of Hillstrom & Bale, Ltd. (the Firm). Judgment was entered pursuant to an amended order and memorandum issued June 7, 1989.

## FACTS

In November, 1986, the Firm agreed to represent Gaughan in his marriage dissolution. Gaughan was told that attorney Robert Hillstrom would be the individual leading the representation and would charge $195 per hour for his services. The Firm did not inform Gaughan of the hourly rates of any other attorney.

Gaughan signed a written retainer in February, 1987. That agreement was silent as to the amount of the Firm's attorneys' fees or hourly rates. It did list the factors which would be used to determine the overall fee, but it left the determination of the fee to the Firm's discretion. The Firm warned Gaughan that because of the complexity of the dissolution action, the fee could exceed $500,000.

In March, 1987, Gaughan gave the Firm a $15,000 retainer. In September, 1987, the Firm requested another $50,000. Gaughan paid the additional $50,000, and asked the Firm to justify the request with an itemization of the services provided. The Firm sent Gaughan a letter indicating the total time spent in early October, 1987. In late October, the Firm gave Gaughan the itemization showing a total bill of approximately $110,000. Upon receipt of the itemization, Gaughan discharged the Firm.

On August 1, 1988, the Firm began a civil suit, based in contract, by filing a summons and complaint seeking $45,-264.31. This amount represented the total bill less the $65,000 already paid by Gaughan. A week later, as part of the dissolution case, the Firm filed an application for an attorneys' lien for the same amount under Minn.Stat. § 481.13 (1988). Thus, the Firm created two actions to determine how much money Gaughan owed the Firm.

On August 14, 1988, Gaughan answered the summons and complaint in the contract case. He also filed a counterclaim asking for a refund of all or part of the $65,000 paid to the Firm, alleging that the $65,000 paid was not exhausted by the Firm's legal services. Four days later, Gaughan served a request for production of documents on the Firm. The request asked for the original handwritten time slips used to compute the Firm's fee.[1] On that same day, the Firm, in the dissolution case, filed an amended application for an attorneys' lien.

On August 19, 1988, the trial court, in the dissolution case, heard the Firm's attorneys' lien application. Gaughan objected to the hearing on a number of grounds. He also moved for a continuance claiming that 11 days was not enough time to prepare a defense to the attorneys' lien application. The trial court rejected Gaughan's objections and denied his motion for a continuance.

At the hearing, the Firm orally moved the trial court for an order to quash Gaughan's request for production of documents. Gaughan argued that the original time slips were necessary to perform a handwriting analysis. This analysis, Gaughan argued, was necessary to prove his claim that the time slips were not filled out by the attorneys and were not filled out at the time the Firm performed the work. Gaughan alleged the analysis would prove the Firm's claimed fee was not reasonable and perhaps fraudulent and that he should prevail on his counterclaim.

Gaughan also claimed the trial judge had no jurisdiction to rule on the motion to quash. Gaughan argued the request for

---

\* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

1. Gaughan previously had received a computer-generated itemization of the Firm's work. It listed who worked on his case, what that person did, how much time was spent on each task, and the hourly rate for each employee.

production of documents was related to the contract case, and the trial judge was assigned only to the dissolution case. Also because the hearing was only in regard to the attorneys' lien application, he argued that the trial judge could not rule on the Firm's motion.

The Firm admitted that the time slips were not filled out contemporaneously with the work done and often were not filled out by the attorneys, but rather by staff personnel based upon attorney notes. The Firm also admitted that many time slips covering many days were filled out at the same time. Based on this admission, the trial court saw no reason for the production of the original time slips, and quashed the request.

Although the trial court denied Gaughan's motion to continue the attorneys' lien application hearing, it did not rule on the application. Instead, the trial court accepted the computer-generated itemization of the Firm's bill and took the matter under advisement. The trial court also allowed the parties more time to submit further written arguments.

On September 14, 1988, Gaughan filed a notice to remove the trial judge from the contract case. The next day, the trial court heard Gaughan's motion to remove, and the Firm's motion to consolidate the contract case with the attorneys' lien application. The trial judge found the removal motion to be untimely and denied it. He reserved ruling on the consolidation request.

On November 10, 1988, Gaughan asked the trial court to reconsider its order quashing the request for production of documents. The trial court denied the motion on the grounds that the original time slips were unnecessary given the Firm's admission.

On March 13, 1989, the trial court issued an order and memorandum formally consolidating the two cases and finding the reasonable value of the Firm's services to be $95,386.81. After giving Gaughan credit for the $65,000 paid, the trial court ordered a $30,386.81 attorneys' lien to be charged against Gaughan's property.

On April 26, 1989, the attorneys' lien enforcement hearing was held. During the hearing, the Firm asked for prejudgment interest. The trial court reserved ruling on this motion. Gaughan moved for a hearing on the issues alleged in his counterclaim in the contract action. The trial court denied this motion, stating that Gaughan was not entitled to a refund of any money because the reasonable value of the Firm's services was over $65,000. Thus, there were no issues remaining to be tried in the counterclaim action.

On June 7, 1989, the trial court issued an amended order and memorandum, ordering enforcement of the attorneys' lien. The trial court also stated that it found in favor of the Firm for $30,386.81 in both the attorneys' lien application and the contract case, "with any payment on one judgment serving as a credit against the other judgment, dollar for dollar." The order also denied the Firm's request for prejudgment interest.

Gaughan filed a notice of appeal of the June 7 order and memorandum, alleging that the trial judge should have removed himself from the contract case, and that Gaughan did not get an opportunity to fairly litigate the issue of the reasonable value of the Firm's services. The Firm filed a notice of review alleging that the trial court erred in denying it prejudgment interest.

### ISSUES

1. Did the trial court err in denying Gaughan's motion to remove?

2. Did the trial court err in determining the reasonable value of the Firm's legal services?

3. Did the trial court err by failing to award prejudgment interest to the Firm?

### ANALYSIS

1. Notice of removal.

A party has a right to remove a judge from a trial or hearing. Minn.R.Civ.P. 63.-

03.[2]

■ Gaughan requested production of documents in the civil contract action. On August 19, 1988, during the attorneys' lien application hearing, the Firm orally moved to quash Gaughan's request for production of documents. Neither the trial court nor Gaughan were notified that this motion regarding the contract action would be made at the attorneys' lien hearing. Although the trial judge was not previously assigned to the contract action, because he ruled on the Firm's motion to quash, the trial judge "presided at a motion * * * [and thus] may not be removed except upon an affirmative showing of prejudice on the part of the judge." *Id. See also Zweber v. Zweber*, 435 N.W.2d 593, 594 (Minn.Ct.App. 1989), *pet. for rev. denied* (Minn. March 29, 1989).

In his notice to remove Gaughan made no showing of prejudice on the part of the trial judge. Therefore removal was not required under Minn.R.Civ.P. 63.03. Furthermore, Gaughan did not file his notice to remove until 26 days after the trial judge ruled on the Firm's motion. The trial judge's decision, denying Gaughan's notice of removal because it was not timely, was not an abuse of discretion and must be affirmed.

2. **The reasonable value of the Firm's legal services.**

a. **Common law contract action.**

"In actions for the recovery of money * * * *the issues of fact shall be tried* by a jury * * *." Minn.R.Civ.P. 38.01 (emphasis added).

■ The Firm brought a lawsuit against Gaughan based upon its contract. Gaughan counterclaimed. The trial court, in its amended order, granted judgment for the Firm in the contract action, although there was no trial, summary judgment or other adjudication of the merits of the contract claim. The trial court used summary proceedings to dispose of this common law

suit. None of the issues in the claim, including the reasonable value of the Firm's fee, were litigated. For this reason, we reverse the judgment in the common law contract action and remand for a trial on those issues.

b. **Attorneys' lien action.**

A lawyer may establish and enforce an attorneys' lien under Minn.Stat. § 481.13 (1988). In interpreting the statute, this court has said:

> The statute provides that a lien may be established "summarily" in the action or proceeding. Alternatively, the lien may be established in the separate equitable enforcement action. * * *
>
> \* \* \* \* \* \*
>
> * * * Whether the amount is determined in the establishment proceeding or in the enforcement action, *the clients must be given an adequate opportunity to contest the facts regarding the attorney's fees.* * * * When deprivation of property is at issue, minimal due process requires the state to afford a meaningful opportunity to be heard.

*Boline v. Doty*, 345 N.W.2d 285, 289 (Minn. Ct.App.1984) (emphasis added).

Thus, the *Boline* court said, the amount of the attorney's fee must be fairly litigated. *Id.* Yet, because the proceeding is summary in nature, there is no right to a jury trial. *Roehrdanz v. Schlink*, 368 N.W.2d 409, 412 (Minn.Ct.App.1985).

■ Gaughan argues that he was not allowed to fairly litigate the Firm's fee because he had no opportunity to challenge the validity of the Firm's time sheets by cross-examination of the Firm's attorneys. We agree.

The Firm was allowed to submit the typed time sheets and affidavits attesting to the accuracy of the time sheets. The trial court examined the time sheets and took them into consideration in determining the reasonable value of the Firm's services. Essentially, the Firm was allowed to sub-

---

**2.** The notice to remove was filed in September, 1988. Thus, this case is not affected by the revisions in the Rules of Civil Procedure which

took effect on January 1, 1989. All quotations to the rules are, therefore, from the rules which became effective on July 1, 1985.

mit to the trial court a list of the time spent by its attorneys and other personnel and their hourly rates, and Gaughan was not allowed to question the integrity of the time sheets.[3] Thus, the trial court allowed the Firm's attorneys to testify as to the amount of time spent on Gaughan's case and the value of this time, but did not allow Gaughan the opportunity to cross-examine the attorneys. This is not fair litigation. Only through cross-examination of the Firm's attorneys can Gaughan challenge the accuracy and validity of the Firm's time sheets. *See State ex rel. Fisher v. Devins*, 294 Minn. 496, 499–501, 200 N.W.2d 28, 31–32 (1972) (holding the trial court erred in not allowing cross-examination).

Moreover, in this case the trial court granted judgment in the contract action in addition to enforcing the attorneys' lien. The contract case alone would not have been a summary proceeding, and Gaughan certainly would have been allowed to cross-examine the Firm's attorneys had this been a common law contract case.

■ The trial court erred in not allowing Gaughan to cross-examine the Firm's attorneys or otherwise challenge the time sheets. We hold that although Minn.Stat. § 481.13 calls for a summary proceeding, where an attorney produces evidence to support a claimed attorney's fee, a client must be allowed to challenge that evidence. To hold otherwise would permit attorneys to present their time sheets, billing statements, or other evidence to the trial court unchallenged, and then be awarded an attorneys' lien. Such a result does not comport with due process and fair play.

It should be noted that proceedings under Minn.Stat. § 481.13 retain their summary nature. There is no jury trial. There is no new action necessitating a new judge, file, or filing fee. However, before an attorneys' lien can be granted and enforced, the reasonable amount of the attorney's services must be fairly litigated.

c. Consolidation.

■ The reasonable value of the Firm's fee was not tried in the common law contract action, nor was it fairly litigated in the attorneys' lien action. Therefore, we reverse both judgments. Further, because under the rules of civil procedure the common law action must, where requested, be tried to a jury, and because the attorneys' lien action is a summary proceeding tried before a judge, we reverse the trial court's order consolidating the two actions. Although both actions have similar issues to be decided, because they are governed by different procedural rules, we hold the consolidation caused "undue confusion" and thus, was an abuse of the trial court's discretion. *See Fitzer v. Bloom*, 253 N.W.2d 395, 402 (Minn.1977).

■ On remand, the Firm must elect to prosecute only one of the two actions. Once that action reaches finality, the issue of the reasonable value of the Firm's fee will be resolved. Principles of collateral estoppel preclude relitigation. *Boline*, 345 N.W.2d at 289. The remaining action, therefore, should be dismissed.

3. Prejudgment interest.

Prejudgment interest is allowed on all money judgments except:

(2) judgments, decrees, or orders in dissolution, annulment, or legal separation actions;

\* \* \* \* \* \*

and;

(6) that portion of any verdict or report which is founded upon interest, or costs, disbursements, attorney fees, or other similar items added by the court.

Minn.Stat. § 549.09, subd. 1(b) (1988). The trial court found that both of the above quoted exceptions applied to this case and thus did not award prejudgment interest to the Firm. We disagree with the analysis but agree with the trial court's conclusion.

■ We find that Minn.Stat. § 549.09, subd. 1(b)(2) does not preclude prejudgment

---

**3.** We do not hold that Gaughan is entitled to the original time sheets. We believe the trial court's order quashing Gaughan's attempt to dis-
cover the original time sheets, which was not challenged on appeal, was correct.

interest for an award of attorney fees. The fact that this action arose out of an agreement to represent Gaughan in a dissolution proceeding does not make it a dissolution action. Minn.Stat. § 549.09, subd. 1(b)(2) does not apply.

Moreover, Minn.Stat. § 549.09, subd. 1(b)(6) "applies only to costs and attorney fees *added* to a judgment by a court." *Seaway Port Authority of Duluth v. Midland Insurance Co.*, 430 N.W.2d 242, 252 (Minn.Ct.App.1988) (emphasis in original).

> [T]he costs and fees for which [the plaintiff] is reimbursed have not been "added by the court" to this judgment, they are the subject matter of the judgment itself. It was proper for the trial court to award prejudgment interest on the judgment.

*Id.*

 The *Seaway* case demonstrates that Minn.Stat. § 549.09, subd. 1(b)(6) does not preclude adding prejudgment interest to a judgment for attorney fees when the fees are the subject matter of the lawsuit. Thus, the trial court erred in relying on that part of the statute in denying prejudgment interest.

However, while we disagree with the trial court's reasoning, we affirm its decision to deny prejudgment interest in the attorneys' lien action. An attorneys' lien is not a money judgment, but rather is a "hold or claim on the property as security for a debt or charge." *Boline*, 345 N.W.2d at 288. Prejudgment interest is authorized only for money judgments. Minn.Stat. § 549.09, subd. 1(a). Support for the relevance of this distinction is found in the mechanics' lien statute. The Minnesota legislature, rather than assuming prejudgment interest would be added to a mechanics' lien, specifically stated that prejudgment interest would be awarded in such an action. *See* Minn.Stat. § 514.135 (1988). The legislature did not enact a similar provision in the attorneys' lien statute. Accordingly, we hold prejudgment interest under Minn.Stat. § 549.09, subd. 1(b) cannot be added to an attorneys' lien.

## DECISION

The trial court properly denied Gaughan's notice of removal. However, because the reasonable value of the Firm's legal services was not fairly litigated, the judgments are reversed and this case is remanded so that (1) the Firm may elect to proceed with either the common law contract action or the statutory attorneys' lien action, and (2) the amount of the Firm's fee can be litigated consistent with the procedural rules and due process principles discussed herein. Further, we hold that prejudgment interest is not allowed in a statutory attorneys' lien action.

Affirmed in part, reversed in part and remanded.